AMY JANE LONGO (Cal. Bar. No. 198304)
Email: longoa@sec.gov
DAVID M. ROSEN (Cal. Bar No. 150880)
Email: rosend@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br>vs.<br>ROBERT CORTEZ MARSHALL,<br>Defendant. | Case No. 2:17-cv-02189-JAD-EJY<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANT ROBERT CORTEZ MARSHALL'S OBJECTION TO MAGISTRATE ORDER** |

# I. INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC") submits this Response to the Objection to Magistrate Order ("Obj.") filed by defendant Robert Cortez Marshall ("Marshall") (Dkt. No. 43), concerning the SEC's motion for monetary relief against Marshall. Dkt. No. 28 ("Mot."). Because Marshall has shown no grounds for the Court to overturn the magistrate judge's order, his objection should be overruled and the SEC's motion for monetary relief should be granted.

The SEC filed this civil enforcement action against Marshall in August 2017, alleging that he raised over $5.7 million from more than 200 investors in a fraudulent, unregistered securities offering. *See generally* Dkt. No. 1 [Complaint]. Marshall promised investors guaranteed returns amounting to over 200% annually, while in reality, Marshall misappropriated millions in investor funds for his own use, making Ponzi-like payments to keep his scheme afloat. *Id.* In November 2018, Marshall agreed to a partial settlement, consenting to entry of a permanent injunction on a no-admit, no-deny basis, while deferring the issue of monetary relief to be decided by motion. Dkt. No. 21. In his consent to judgment, Marshall agreed not to contest the allegations of the SEC's complaint for purposes of the motion for monetary relief. *Id.*

The SEC filed its motion in February 2019, seeking approximately $1.75 million in disgorgement of ill-gotten gains with prejudgment interest, and roughly $1.4 million in civil monetary penalties against Marshall. Dkt. No. 28. In response to the SEC's motion, Marshall offered no actual opposition, but instead requested a four-month extension to conduct discovery and submit supplemental briefing, claiming he planned to demonstrate that certain of the amounts the SEC calculated as ill-gotten gains were actually legitimate business expenditures. Dkt. No. 29. The SEC ultimately acquiesced to Marshall's request, agreeing to a 90-day continuance for supplemental discovery, followed by a 120-day supplemental briefing period. Dkt. Nos. 32, 34. However, Marshall conducted no discovery and submitted no supplemental briefing, and the Court then set the matter for a hearing. Dkt. No. 37.

The day before the December 4th hearing, Marshall advised the SEC that he planned to substitute new counsel and request yet another continuance, claiming that Marshall's then-counsel had a "conflict of interest." *See* Second Supplemental Declaration of Amy Jane Longo, *filed concurrently herewith* ("Sec. Supp. Longo Decl.") ¶ 8, Ex. 4. At the beginning of the remedies hearing, Marshall substituted in his new counsel. *Id.* ¶ 10. The SEC opposed his oral motion for a continuance, and the magistrate judge denied it. *Id.* ¶ 11; Dkt. No. 41. Marshall's objection followed.

Marshall's objection provides no grounds for a continuance of the SEC's motion. First, Marshall's request for a continuance—just as it was at the hearing before the magistrate judge—remains unsupported by any evidence or any other showing of good cause, and contains nothing more than argument by counsel. Putting aside that he has made no evidentiary showing of a "conflict of interest" by prior counsel, there is no right to be represented by counsel, adequately or otherwise, in SEC enforcement actions such as this one. Therefore, whether Marshall was satisfied with his prior counsel's representation has no bearing on whether the Court should grant the SEC's motion at this time. Further, the fact that Marshall, who was recently indicted for wire fraud, has repeatedly invoked the Fifth Amendment concerning the funds he raised from investors and how he spent them, should preclude him from introducing such evidence at this late date in response to the SEC's motion. Marshall has already deferred the SEC's motion for nearly ten months, while still failing to come forward with any opposing evidence or even an articulable theory to challenge the monetary relief the SEC seeks.

In sum, Marshall's latest request for a continuance is merely another delay tactic that should be rejected, and the SEC's motion should be granted at this time.

## II. BACKGROUND

### A. The SEC's Action and Marshall's Consent Judgment

As set forth in the SEC's motion, the SEC filed this action charging Marshall with operating a fraudulent, unregistered securities offering, through which he raised

at least $5.7 million from more than 200 investors, using his now-defunct company R.B.J. Generational Wealth Management, LLC, dba Adz on Wheelz ("Adz"). Mot. at 4-12. Marshall represented that he would use investor funds to purchase cars that would display advertising while being driven through the streets of Las Vegas; however, since the company generated *de minimis* actual advertising revenues, Marshall paid millions of dollars of "royalty" payments to existing investors using new investors' funds, and misappropriated investor funds for his personal benefit. *Id.* Specifically, the Complaint alleges that Marshall misappropriated $1.63 million in investor funds. Dkt. No. 1, ¶ 41 ("Marshall misappropriated $1.63 million of investor funds for his personal benefit, including large cash withdrawals, checks made payable to himself, and for personal expenses, including merchandise, meals and entertainment."); *id.* ¶ 59 (same).

On October 29, 2018, Marshall consented, on a no-admit, no-deny basis, to entry of a judgment permanently enjoining him from violations of the antifraud and registration provisions of the federal securities laws. Dkt. No. 19. Among other provisions, the Consent provides that:

> Defendant further agrees that in connection with the SEC's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion:… (c) for the purposes of such motion, the allegations of the Complaint shall be accepted and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c)….

Dkt. No. 19, ¶ 4. The Court entered Marshall's consent judgment on November 5, 2018. Dkt. No. 21.

### B. The SEC's Motion for Relief

The SEC filed its motion for relief on February 13, 2019. Dkt. No. 28. The motion seeks an order requiring Marshall to disgorge $1,473,661 in ill-gotten gains

with prejudgment interest of $286,103, and imposing a civil penalty of $1,473,661. *Id.*

The SEC's motion is supported by the Declaration of Christopher M. Conte, SEC staff accountant. Dkt. No. 28-1. Mr. Conte's declaration summarizes his review of Marshall's and Adz's bank, brokerage and other financial records, and the bases for his estimation that of the $5.7 million raised by Marshall through Adz, he converted $1,473,660.82 to his personal use. *Id.* ¶¶ 12-18. Mr. Conte further breaks down the categories of the misappropriated funds, including approximately $800,000 of ATM/Cash withdrawals; $200,000 sent to Marshall's brokerage account; $300,000 in American Express charges; and $160,000 of non-business related expenses "such as Louis V[u]itton, Gucci Store, and Ermengildo Zegna" as well as Apple, Best Buy, pawn shops, ticket brokers and restaurants. *Id.* ¶¶ 15-19.

### C. Marshall's First Request to Continue the SEC's Motion, and Failure to File any Opposition

Marshall's response to the SEC's motion, filed on February 27, 2019, did not challenge any of the SEC's figures, nor set forth any contrary evidence regarding Marshall's use of investor funds. Dkt. No. 29. Rather, Marshall requested "a discovery period of 120 days," saying only that:

> Defendant believes that he can show that a substantial amount of these purchases were for legitimate business expenditures. Defendant must be given a chance to conduct discovery and present his evidence to dispute that all of these disbursements were for his personal benefit and should be disgorged.

Dkt. No. 29 at 3. After initially objecting to Marshall's request to delay the motion while he could conduct discovery (Dkt. No. 30), the SEC stipulated to a period of 90 days for supplemental discovery, followed by a 120-day period for supplemental briefing. Dkt. Nos. 33-34.[1]

[1] The SEC had previously produced over twenty gigabytes of documents to Marshall during the discovery period in this action. Dkt. No. 30-1 [Longo Decl.], ¶ 4.

Having already produced to Marshall the financial records from which the proposed disgorgement was calculated, the SEC agreed to provide Marshall the calculations underlying the proposed disgorgement. Dkt. No. 33. Therefore, per the parties' stipulation, the SEC on May 13, 2019 produced to Marshall a spreadsheet underlying its accountant's declaration, identifying the account entries pertinent to the calculations. *See* Dkt. No. 33, ¶ A; Sec. Supp. Longo Decl. ¶ 3, Ex. 1.

Although Marshall had agreed to produce, by June 13, 2019, any evidence "support[ing] a characterization of any of the items in those calculations as business expenses or reimbursements," he made no production by that date. Dkt. No. 33, ¶ B; Sec. Supp. Longo Decl. ¶ 4. Rather, on June 18, 2019, he produced a set of documents purporting to reflect his agreements with various investors to repay them. *Id.* ¶ 5, Ex. 2. Counsel for the SEC responded by letter on June 29, 2019 that these documents did not provide any evidence of actual repayments to investors (which might be considered as an offset to disgorgement), and that absent such evidence, the SEC would not revise its disgorgement calculations. *Id.* ¶ 6, Ex. 3.

Marshall did not provide any additional evidence, nor did he conduct any discovery concerning the disgorgement motion. *Id.* ¶ 7. He also did not file the supplemental briefing he had demanded leave to file. Dkt. No. 37. On October 24, 2019, the Court set a hearing on the motion for December 4, 2019. Dkt. No. 39.[2]

**D. Marshall's Repeated Assertions of the Fifth Amendment**

Rather than producing evidence of purportedly "legitimate business expenditures" made with investor funds, Marshall has consistently asserted the Fifth Amendment right against self-incrimination as to what he did with investors' monies. First, when asked during the SEC's investigation to produce evidence concerning Adz's finances and his role with respect to those accounts, Marshall asserted the Fifth Amendment. For example, Marshall refused to testify about whether he was the

[2] The parties stipulated to continue the initial hearing date from November 25, 2019, due to a conflicting hearing SEC counsel had previously scheduled. Dkt. No. 38.

signatory on each of Adz' bank accounts; what the purpose of each of the bank accounts was, and the source of funds into the accounts; whether he was responsible for disbursements from Adz' accounts; whether he ever opened bank accounts for R.B.J.; whether $150,000 paid to the Cosmopolitan Hotel in Las Vegas was for personal use; and, whether returns paid to existing investors were derived from monies invested by newer investors. Dkt. No. 30-1 [Longo Decl.] ¶ 3, Ex. 1.

Marshall again asserted the Fifth Amendment in connection with the SEC's relief motion. After Marshall requested supplemental discovery and briefing, the SEC served document requests and interrogatories concerning the amounts Marshall raised from investors; any amounts he claimed to have repaid to investors; and any claimed offsets to the disgorgement requested by the SEC in this action. Dkt. No. 40 [Supp. Longo Decl.] ¶¶ 3-4, Exs. 1-2. Rather than answer any of the discovery, Marshall asserted his Fifth Amendment rights as to all the requests. *Id.*[3]

**E. Marshall's Belated Request for Another Continuance**

The day before the December 4th hearing, an attorney contacted the SEC indicating he planned to substitute in as counsel for Marshall and that he sought a continuance of the hearing, based on an asserted "conflict of interest" by Marshall's then-counsel and "possibly other issues." Sec. Supp. Longo Decl. ¶ 8, Ex. 4. The SEC indicated it would oppose, and asked Marshall to provide the grounds for, and file, any substitution of counsel. *Id.* ¶ 9, Ex. 5. No substitution of counsel, nor any motion to continue, was filed that day.

At the commencement of the remedies hearing, Marshall's new counsel hand-filed the substitution paperwork, and made an oral motion for a continuance. *Id.* ¶ 10. Marshall's substitution of counsel papers did not contain a request to continue the

---

[3] On October 16, 2019, the Department of Justice announced a grand jury indictment against Marshall for five counts of wire fraud and money laundering. *U.S. v. Marshall,* No. 2:19-cr-00270-JAD-BNW (D. Nev.). The indictment charges Marshall with defrauding investors in Adz on Wheelz, based on allegations similar to those in the SEC's complaint. Supp. Longo Decl. ¶¶ 30-1, Ex. 3.

SEC's motion under Local Rule 11-6(e), and were not accompanied by any evidence as to the supposed "conflict" or "other issues," nor as to why Marshall's request was not made sooner. *See* Dkt. No. 42. The SEC opposed the request, and the magistrate judge denied it. *See* Sec. Supp. Longo Decl. ¶ 11; Dkt. No. 41.

Like his oral motion, Marshall's objection to the magistrate's order contains no evidence as to what was previously represented to be a "conflict" or any "other issues"; when such conflict or issues were discovered, or why Marshall could not have acted sooner. Obj. at 1-2. Indeed, Marshall no longer asserts any "conflict of interest" by prior counsel. Instead, his objection to the magistrate's order rests entirely on the notion that prior counsel "failed to file a supplemental brief." *Id.* at 2. Additionally, Marshall now seeks to submit unspecified "personal financial records" that he claims are somehow germane to the SEC's motion. *Id.*

## III. ARGUMENT

The district court's review of a magistrate judge's order on a dispositive motion is governed by Fed. R. Civ. P. Rule 72(b)(3). The Court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to" and may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see, e.g.*, *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1206 (D. Nev. 2018) (court conducts *de novo* review where objection is made); Wright & Miller, 12 Fed. Pract. & Proc. Civ. § 3070.2 (3d ed. 2019) (district court must "arrive at its own independent conclusion about those portions to which objections are made"). Because the SEC's motion seeks to dispose of the SEC's claims for relief against Marshall, review under Fed. R. Civ. P. 72(b)(3) is appropriate. *See, e.g. SEC v. Nadel*, 206 F. Supp. 3d 782, 784 (E.D.N.Y. 2016) (district court conducts *de novo* review of objections to magistrate's order on disgorgement and penalties).[4]

[4] Marshall suggests that the standard of review is Fed. R. Civ. P. Rule 72(a), which

**A. The SEC's Motion Warrants the Requested Monetary Relief**

The SEC's motion sets forth ample bases for the Court to impose the requested monetary relief: disgorgement of ill-gotten gains in the amount of $1,473,661, with prejudgment interest of $286,103, and a civil monetary penalty of $1,473,661.

**1. The Court should order the requested disgorgement**

Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable. *SEC v. Platforms Wireless*, 617 F.3d 1072, 1096 (9th Cir. 2010); *J.T. Wallenbrock*, 440 F.3d at 1113; *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (disgorgement is an appropriate equitable remedy for violations of the securities laws); *SEC v. Cross Fin. Servs.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995) (defendant ordered to disgorge net receipts from investors in fraudulent offering of notes). "'Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable.'" *Id*. In contrast to damages, which are designed to compensate fraud victims, disgorgement forces a defendant to surrender his unjust enrichment and thus serves to reduce the incentive to violate the law. *See Rind*, 991 F.2d at 1491, 1493; *see also JT Wallenbrock*, 440 F.3d at 1113; *First Pacific Bancorp*, 142 F.3d at 1191.

To establish an appropriate disgorgement amount, the SEC need only show a "reasonable approximation" of profits or investor losses causally connected to the violation. *Platforms Wireless*, 617 F.3d at 1096; *J.T. Wallenbrock*, 440 F.3d at 1113-14. Once the SEC has made such a showing, the burden then shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *Platforms Wireless*, 617 F.3d at 1096 (quoting *SEC v. First City Financial Corp.,*

---

governs non-dispositive motions. Obj. at 2. However, because the SEC's motion, if granted, would dispose of the remainder of the action, review under Rule 72(b) is appropriate. Under either standard of review however, the magistrate judge's order denying a continuance was appropriate.

*Ltd.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)). As the Ninth Circuit has observed, "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* (quoting *First City Financial*, 890 F.2d at 1231, 1232).

As a threshold matter, the facts alleged in the SEC's Complaint establishing Marshall's liability and violations of the federal securities law are undisputed and admitted for purposes of the SEC's motion. As the Ninth Circuit held in *JT Wallenbrock*, the consent and judgment of injunctive relief precludes a defendant from denying or arguing that they did not violate the federal securities laws in the manner set forth in the SEC's complaint. *Id.* at 1112 (affirming grant by district court of disgorgement, prejudgment interest and civil penalties where defendant had previously consented to entry of permanent injunction); *see also SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1189 (D. Nev. 2009) (granting motion for disgorgement, prejudgment interest and civil penalties based upon allegations in complaint, consent of defendants and judgments entered).

In addition to the uncontestable allegations of the Complaint, the SEC's motion presents a reasonable, evidence-based approximation of the amounts of Marshall's ill-gotten gains. Mr. Conte's declaration summarizes his review of bank, brokerage and other financial records for Adz and Marshall, including accounts on which Marshall was a signatory. Mr. Conte cites: (1) the accounts at issue; (2) the fact that Adz investor funds flowed into the accounts; and (3) the amounts of investor funds converted by Marshall, in the forms of ATM and cash withdrawals, brokerage account transfers, and various other non-business related expenses. Dkt. No. 28-1.

Marshall has never submitted any opposition to the SEC's motion, despite requesting and receiving a lengthy continuance to do so, with the opportunity for additional discovery and supplemental briefing. He has not provided the Court with any evidence concerning the investor funds he raised, or how he used them. Since Marshall has done nothing to challenge the appropriateness of the SEC's disgorgement calculations, they should be accepted by the Court.

**2. The Court should impose the requested civil penalties**

The judgment to which Marshall consented also orders him to pay a civil penalty in an amount to be determined by the Court upon motion of the SEC. Congress enacted civil penalty provisions to achieve the dual goals of punishment of the individual violator and deterrence of future violations. *SEC v. Marker*, 427 F. Supp. 2d 583, 592 (M.D.N.C. 2006), *citing SEC v. Coates*, 137 F. Supp. 2d 413, 428 (S.D.N.Y. 2001). The deterrence of securities fraud through the imposition of monetary sanctions serves such important goals as encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry. *SEC v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998).

Section 20(d)(1) of the Securities Act, 15 U.S.C. § 77t(d)(1), and Section 21(d)(3)(A) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(A), provide three tiers of maximum penalty amounts for specified degrees of culpability. The most serious violations are punishable by third-tier penalties.[5] A third-tier civil penalty is appropriate where, as here, the violation involves fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and if it directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. 15 U.S.C. §§ 77t(d)(1), 78u(d)(3)(A). In determining the amount of penalties, courts frequently apply the factors set forth in *SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980), which are also used to establish the need for injunctive relief. This is because civil penalties, like permanent injunctions, are imposed to deter the wrongdoer from similar conduct in the future, in assessing civil penalties. *See*, *e.g.*, *SEC v. Abacus Int'l Holding Corp.*, No. C 99–02191, 2001 WL 940913, at *5 (N.D. Cal. Aug.11, 2001). These factors include: (i) the degree of scienter involved; (ii) the isolated or recurrent nature of the infraction; (iii) the defendant's

---

[5] For conduct occurring after February 14, 2005, the third tier imposes a maximum limit for each violation of the greater of (1) $160,000 for a natural person or $775,000 for any other person, or (2) the gross amount of pecuniary gain to the defendant as a result of the violation. 17 C.F.R. §§ 201.1001, 201.1005.

recognition of the wrongful nature of his conduct; (iv) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (v) the sincerity of his assurances against future violations. *See Murphy*, 626 F.2d at 655.

Marshall's violations of the antifraud and securities registration provisions of the securities laws clearly meet the statutory criteria for the imposition of a third-tier civil penalty. Marshall raised more than $5.7 million by making misrepresentations to investors, including baseless financial projections and misrepresentations regarding the availability of refunds to investors, and by engaging in a scheme to defraud, which involved operating Adz on Wheelz as a Ponzi scheme and misappropriating substantial amounts of investor funds. Marshall's violations involved fraud and deceit, as well as knowing and repeated use of investors' money in direct conflict with representations made to investors, and his deceptive and intentional acts caused substantial losses to investors. Marshall acted with a high level of scienter and has never recognized the wrongful nature of his conduct. Because third-tier civil penalties are appropriate, the Court should order Marshall to pay a civil penalty of $1,473,661, equal to the amount of his gross pecuniary gain.

**B. Marshall Has Not Shown Good Cause for a Continuance**

Nothing in the record, including in Marshall's objection to the magistrate's order, justifies a further continuance of the SEC's motion. Rather, like the oral motion he made to the magistrate judge, Marshall's request is entirely without factual basis and fails to demonstrate good cause for a further delay. This is particularly true in light of the previous continuance and opportunity for supplemental discovery and briefing that he has already received, yet failed to use to oppose the SEC's motion.

**1. Marshall's request for a continuance is deficient**

As a threshold matter, under Local Rule 11-6(e), when Marshall substituted in his new counsel on the morning of the hearing on the SEC's motion, his substitution papers were required to "request specific relief" from the scheduled hearing on the

motion.[6] Absent such a showing, Marshall's substitution of counsel is governed by Local Rule 11-6(c), which provides that:

> Except where accompanied by a request for relief under subsection (e) of this rule, the attorney's signature on a stipulation to substitute the attorney into a case constitutes an express acceptance of all dates then set for pretrial proceedings, trial, or hearings, by the discovery plan or any court order.

*Id.* Here, Marshall waited until the morning of the hearing to substitute counsel and orally request a continuance. His substitution papers did not specifically request relief from the SEC's motion hearing, and other than argument by counsel at the hearing, he offered no showing in support of good cause for a continuance.

Marshall's objection to the magistrate's order denying a continuance is likewise not accompanied by any declaration or other evidence explaining his delay. While Marshall argues that "[a]fter it became known to Defendant that his former counsel had failed to file a supplemental brief, Defendant terminated his services" (Obj. at 2), his papers are notably silent as to when Marshall supposedly learned this information. Defendant's supplemental brief in response to the SEC's motion was due on October 14, 2019; however, he did not substitute new counsel until more than 45 days later, on December 4, 2019. Dkt. No. 42. Marshall offers no reason for his non-compliance with L.R. 11-6, and for this reason, his request for a continuance should be denied.

**2. Marshall does not have a right to counsel in this action**

Setting aside its procedural failings, Marshall's request for a continuance is also substantively wanting. As stated in his objection to the magistrate's order, Marshall's request is now premised wholly on the notion that his "former counsel

---

[6] L.R. 11-6(c) provides that, "Except for good cause shown, no withdrawal or substitution will be approved if it will result in delay of discovery, the trial, or any hearing in the case. ***Where delay would result, the papers seeking leave of the court for the withdrawal or substitution must request specific relief from the scheduled discovery, trial, or hearing***." (emphasis added).

wholly failed to adequately represent" him. Dkt. No. 43 at 3.[7] However, unlike in criminal cases, there is no right to counsel in civil enforcement actions. *See Turner v. Rogers*, 564 U.S. 431, 441, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011) ("the Sixth Amendment does not govern civil cases"); *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir. 1996) ("it is well-established that there is generally no constitutional right to counsel in civil cases"); *FTC v. World Wide Factors, Ltd*., 882 F.2d 344, 347 (9th Cir. 1989) ("The sixth amendment only gives defendants the right to counsel in criminal proceedings"). The question of whether Marshall previously had "adequate representation" therefore has no bearing on his objection to the magistrate's order. To delay a ruling on the SEC's motion so that Marshall can, through his newest counsel, file an opposition that is essentially ten months overdue, has no basis in law and should be denied.

**3. Marshall should be precluded from offering evidence**

That Marshall repeatedly invoked the Fifth Amendment concerning the funds he raised from investors and how he spent them should further preclude him from introducing evidence at this late date in response to the SEC's motion. "[I]t would be an abuse of the Fifth Amendment to allow a civil litigant to use it to offer proofs while denying the adversary discovery of his contentions."; *SEC v. Benson*, 657 F. Supp. 1122, 1129 (S.D.N.Y. 1987); *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911-12 (9th Cir. 2008). While he obviously has the right to assert the privilege, Marshall "cannot have it both ways. By hiding behind the protection of the Fifth Amendment as to his contentions, he gives up his right to prove them." *Id.; see also Nationwide Life Ins*., 541 F.3d at 910-11. Marshall claims he now has "personal financial records" that will show he is entitled to some offset from the SEC's calculation of his ill-gotten gains. Obj. at 2. However, during the SEC's pre-filing

[7] The idea that Marshall's former counsel had a disqualifying "conflict of interest" (Sec. Supp. Longo Decl. Ex. 4), previously cited as the grounds for the late-breaking substitution and motion for continuance, appears nowhere in Marshall's objection.

investigation, and again during these monetary relief proceedings, Marshall asserted the Fifth Amendment as to his use of investor funds. Therefore, he should not be permitted to come forward with evidence he has refused to produce previously.

Additionally, this Court should, draw an adverse inference from Marshall's repeated invocation of the Fifth Amendment. It is well-established that "in civil proceedings, adverse inferences can be drawn from a party's invocation of [the] Fifth Amendment right" not to testify. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000); *see also SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof."). To obtain the adverse inference, the SEC is required to show a substantial need for the information; that no other, less burdensome means of obtaining the information exists; that "the value of presenting [the] evidence" is not "substantially outweighed by the danger of unfair prejudice to the party asserting the privilege"; and that independent evidence of the fact about which the party refuses to testify exists. *SEC v. Luna*, No. 2:10-CV-2166-PMP-CWH, 2014 WL 794202, at *12 (D. Nev. Feb. 26, 2014) (quoting *Nationwide*, 541 F.3d at 911-12); *see also Glanzer*, 232 F.3d at 1264. *See, e.g., SEC v. Colell*o, 139 F.3d 674, 677-78 (9th Cir. 1998) (court may draw adverse inference or strike evidence in civil case where defendant invokes Fifth Amendment privilege); *SEC v. Strategic Global Inv., Inc.*, 262 F. Supp. 3d 1007, 1022 (S.D. Cal. 2017) (adverse inference appropriate); *SEC v. Rose Fund, LLC,* 156 Fed. Appx. 3 (9th Cir. 2005) (striking declaration filed by defendant who invoked Fifth Amendment was not abuse of discretion). Given Marshall's assertions of the Fifth Amendment during the SEC's investigation and in this litigation, the Court should draw an adverse inference as to how he utilized the investor funds that the SEC asserts he misappropriated.

**4. Marshall cannot show good cause for another continuance**

Marshall's request for a continuance comes nearly ten months after the SEC's motion was filed. In those ten months, Marshall has failed to raise any

factual or legal grounds to challenge the relief the SEC seeks. After initially failing to file any substantive opposition, Marshall has already been the beneficiary of an elongated supplemental discovery and briefing period. Even with that added time, Marshall failed to serve any discovery or submit any supplemental briefing to the Court. He has had ten months to come forward with some evidentiary showing to offset the SEC's allegations of his ill-gotten gains, yet he has only redoubled his earlier assertions of the Fifth Amendment.

After newly claiming, on the morning of the remedies hearing, that his prior counsel had a disqualifying conflict of interest or "other issues," Marshall's objection to the magistrate judge's order offers no evidence to support this notion. Instead, he now merely seeks a "redo"—wanting to erase his prior failure to file any opposition to the SEC's motion. Marshall's request, however, is based purely on an inapplicable theory that he lacked adequate representation when represented by prior counsel. Nothing in the record or in his objection justifies continuing the SEC's motion further.

## IV. CONCLUSION

For the reasons set forth herein, the SEC respectfully requests that the Court grant its motion and award against Marshall the following monetary relief: disgorgement of $1,473,661; prejudgment interest of $286,103; and a civil penalty of $1,473,661.

Dated: December 27, 2019

Respectfully submitted,

*/s/ Amy Jane Longo*
Amy Jane Longo
David M. Rosen
Attorney for Plaintiff
Securities and Exchange Commission

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

[X] U.S. SECURITIES AND EXCHANGE COMMISSION, 444 S. Flower Street, Suite 900, Los Angeles, California 90071

Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On December 26, 2019, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANT ROBERT CORTEZ MARSHALL'S OBJECTION TO MAGISTRATE ORDER** on all the parties to this action addressed as stated on the attached service list:

[ ] **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

[ ] **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

[ ] **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ] **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[ ] **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[X] **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X] **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ] **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: December 26, 2019

*<u>/s/ Amy Jane Longo</u>*
Amy Jane Longo

***SEC v. Robert Cortez Marshall***
**United States District Court – District of Nevada**
**Case No. 2:17-cv-02189-JAD-EJY**

**SERVICE LIST**

HAROLD P. GEWERTER, ESQ.
HAROLD P. GEWERTER, ESQ., LTD.
1212 S. Casino Center Boulevard
Las Vegas NV 89104
Email: harold@gewerterlaw.com
***Counsel to Defendant Robert Cortez Marshall***